IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GERALD CAIN II | § | |
| TDCJ-ID #812200 | § | |
| V. | § | C.A. NO. C-04-502 |
| | § | |
| GILBERT HERRERA, ET AL. | § | |

**MEMORANDUM AND RECOMMENDATION ON**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Pending is defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56 (D.E. 28). Plaintiff has filed a response in opposition (D.E.29). After considering the record, defendants' motion, and plaintiff's response in opposition, it is respectfully recommended that defendants' motion for summary judgment be granted, and that plaintiff's claims against Gilbert Herrera and Aurelio Ambriz be dismissed with prejudice.

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. BACKGROUND FACTS AND PLAINTIFF'S ALLEGATIONS

Plaintiff is presently incarcerated at the McConnell Unit in Beeville, Texas. He filed his original complaint on October 6, 2004, alleging, *inter alia*, that ceratin McConnell Unit officers and officials had retaliated against him for exercising his right to file grievances and/or access to the courts (D.E. 1). Following a Spears hearing, service was ordered on Doug Dretke, the former director of the Texas Department of Criminal Justice (TDCJ), Captain Aurelio Ambriz, and Officer Gilbert Herrera, supervisor of the McConnell Unit inmate grievance department (D.E. 13). On

August 30, 2005, defendant Dretke was granted summary judgment in his favor and dismissed from this lawsuit (D.E. 33).

Plaintiff claims that Captain Ambriz and Officer Herrera searched his legal materials in retaliation for his filing grievances. He seeks compensatory and punitive damages.[1]

## III. SUMMARY JUDGMENT EVIDENCE

In support of their motion for summary judgment (D.E. 28), defendants offer the following evidence:

Ex. A: Affidavit of Gilbert Herrera;

Ex. B: Affidavit of Aurelio Ambriz;

Ex. C: Plaintiff's classification records from October 2003 through January 2005; and

Ex. D: Plaintiff's disciplinary records for offense dated November 17, 2003.[2]

The following facts are not in dispute:

Plaintiff arrived at the McConnell Unit in January 2003. D.E. 1 at attached p. 1. At his classification hearing, plaintiff sought protective custody based on a gang-related assault that had occurred at his other unit. Id. Instead, plaintiff was classified as general population close custody. Id. Plaintiff refused this assignment and was placed in solitary confinement. Id. Plaintiff filed a grievance and complained that a life in danger (LID) investigation should have been conducted. Id.

---

[1] Plaintiff sought prospective injunctive relief against defendant Dretke in the form of restructuring the TDCJ grievance process. That claim was dismissed (D.E. 33).

[2] Plaintiff objects to Exhibits C and D. However, the records are not being offered to establish the truth of the matter asserted on a contested issue, i.e., that plaintiff's life in danger claim was properly investigated or that the disciplinary hearing was conducted properly; rather these documents serve only to document the chronology of events in this case, and as such, do not constitute hearsay. Fed. R. Evid. 801 9(c). Moreover, they are business records kept in the course of regular TDCJ activity, and as such, are admissible. Fed. R. Evid. 803(6).

Plaintiff's LID grievance was never processed. Id. Plaintiff filed a step two LID grievance. It was returned stating that the grievable time period had expired. Id.

In August, 2003, plaintiff was placed in pre-hearing detention and his property seized. D.E. 1 at attached p. 2. Plaintiff's radio was never returned. Id. Plaintiff filed a step 1 grievance complaining about the missing radio, but it was never processed. Id. Plaintiff filed a step two grievance. Id. It was returned with a notation that the grievable time period had expired. See D.E. 1, Ex. Y.

A LID hearing was held on October 23, 2003. D.E. 28, Ex. C at 9. Notes indicate that plaintiff refused to attend. Id. A second LID hearing was held on October 27, 2003. Id. Plaintiff was denied a transfer off the Unit. Id. The Unit Classification Committee (UCC) found no evidence to support plaintiff's LID claim. Id.

A LID hearing was held on November 17, 2003. D.E. 28, Ex. C at 8. The UCC denied plaintiff's LID request finding insufficient evidence. Id.

A life endangerment hearing was held on November 24, 2003. D.E. 28, Ex. C at 8. Notes indicate that plaintiff was assigned to administrative segregation (ad. seg.) due to an escape attempt. Id.

In January, 2004, while in ad.seg, plaintiff began having difficulties with Captain Ambriz. Plaintiff claims that Captain Ambriz was violating ad. seg. rules when he retained plaintiff at Level III, a punitive level, for 120 days. D.E. 1 at attached p. 3. Plaintiff argued that he should have been upgraded to a non-punitive level after 30 days in ad. seg. Id.. Plaintiff filed a step one grievance complaining about the ad. seg. policy infractions, but the ad. seg. grievance was never processed. Id.

At the evidentiary hearing, plaintiff testified that in the fall of 2004, he filed a grievance complaining that his grievances were disappearing. See D.E. 12 at 3-4. In this grievance, plaintiff also complained that he had a case pending in federal court and that he planned on contacting the ACLU about his missing grievances.

Also in the fall of 2004, Officer Herrera was contacted by TDCJ administrators in Huntsville who requested a copy of one of plaintiff's grievances that was relevant to his lawsuit C.A. No. C-04-096.[3] Herrera Aff't at ¶ 5. The grievance department was unable to locate the grievance in plaintiff's file. The grievance department then examined the grievance files of all McConnell Unit inmates to see if the grievance had been misfiled. Id. Again, they did not file the grievance, and Officer Herrera asked plaintiff if he had a copy. Id. Plaintiff indicated that he would look for a copy. Id. Thereafter, Officer Herrera was ordered to search through plaintiff's papers in an attempt to find the grievance. Id. Office Herrera and Captain Ambriz went to plaintiff's cell and then brought plaintiff and his paper work to the major's cell. Id. Officer Herrera went through plaintiff's paperwork, but was unable to find the grievance. Id. The search of his materials took approximately one hour. D.E. 1 at attached p. 4-5. Plaintiff remained in the room the entire time his papers were examined. Id. Plaintiff was then returned to his cell with his papers. Id.

## IV. SUMMARY JUDGMENT STANDARD

Rule 56(c) provides that summary judgment shall be rendered where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also, Pollack v. Federal Deposit Ins. Corp.. 17 F.3d 798, 803 (5th Cir. 1994). By its

[3] That action was dismissed by order and final judgment entered April 28, 2004. See. C.A. No. C-04-096, D.E. 17. Plaintiff raised a retaliation claim against the McConnell Unit grievance department in that lawsuit, and it was dismissed without prejudice.

very terms, the rule permits summary judgment even if the parties disagree as to some facts. Anderson v. Creighton, 477 U.S. 242, 247-48 (1986). Summary judgment is precluded under Rule 56(c) only when the facts in dispute might affect the outcome of the suit under governing law and the dispute is genuine. Anderson, 477 U.S. at 248. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motions. Caboni v. General Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence or evaluate the credibility of witnesses. See id.

## V. DISCUSSION

Defendants move for summary judgment arguing that: (1) plaintiff's claims against them in their official capacity are barred by the Eleventh Amendment; (2) plaintiff has failed to establish a constitutional violation; and (3) even if plaintiff can establish a constitutional violation, defendants are entitled to qualified immunity to bar plaintiff's claims.

### A. Eleventh Amendment immunity.

The Eleventh Amendment establishes that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. A suit for damages against an official in his official capacity is not considered a suit against that person, but is construed as a suit against the state. Hafer v. Melo, 502 U.S. 21, 25 (1991); Gather v. Ingle, 75 F.3d 207, 209 (5th Cir. 1996)(per curiam). More specifically, the Fifth Circuit has held that the Eleventh Amendment bars prisoners' civil rights suits for money damages against TDCJ-CID officials in their official capacities. Oliver v. Scott, 276 F.3d 736, 742 & n. 5 (5th Cir.

2002). To the extent plaintiff is suing Captain Ambriz and Officer Herrera in their official capacities for money damages, those claims are, in effect, claims against the State of Texas, and are barred by the Eleventh Amendment. Therefore, it is recommended that defendants' motion for summary on plaintiff's claims for money damages against defendants in their official capacities be granted, and that those claims be dismissed with prejudice.

**B. Constitutional violation.**

Defendants argue that plaintiff's claim that his legal property was taken and searched fails to raise a cognizable constitutional claims.

To state a claim under § 1983, a plaintiff must allege a violation of the rights secured by the Constitution or laws of the United States and demonstrate that the alleged deprivation was committed by a person acting under color of state law. Pitrowski v. City of Houston, 51 F.3d 512, 515 (5th Cir. 1995). Defendants argue that the basis for plaintiff's complaint is that defendants' seized and search his legal property in violation of the Fourth Amendment.

Prisoners maintain those constitutional rights which are not inconsistent with the legitimate interests of the prison administration. Hudson v. Palmer, 468 U.S. 517, 525-26 (1984). In Hudson, the Supreme Court held that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his cell." Id. See also Valencia v. Wiggins, 981 F.2d 1440 (5th Cir. 1993) (noting that Hudson held prisoner has no privacy interest in his prison cell nor possessory interest in personal property). Thus, the federal courts have found that the Fourth Amendment prohibition against unreasonable searches does not attach to the prison cell. The legitimate prison objective of maintaining constant security far outweighs a prisoner's right of privacy, assuming such a right does exist. Bell v. Wolfish, 441 U.S. 520, 539-41 (1979). Indeed, a prisoner does not have an expected privacy interest in his personal belongings or in his legal materials. See

Busby v. Dretke, 359 F.3d 708, 715-16 (5th Cir. 2004) (prisoner has no Fourth Amendment privacy interest in cell nor in unsealed letters that were later used against him at trial).

In this case, plaintiff's legal materials were seized and searched. Even assuming that he had a privacy interest in these materials, prison officials are afforded much discretion in such administrative matters. Bell, *supra*, 441 U.S. at 540 & n. 23. Federal courts will not intervene in legitimate administration except in the case of a constitutional violation. Id. The mere seizure of plaintiff's property does not amount to a constitutional violation.

In his summary judgment response plaintiff argues that the constitutional violation at issue is not the search and seizure of his property, but rather, that defendants took his property in retaliation for exercising his right of access to the courts. See D.E. 29 at 2. Actions done in retaliation for the exercise of a constitutional right can form the basis of a § 1983 complaint even when the act, taken for a different reason, might have been legitimate. Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998). The inmate must be able to point to a specific constitutional right that has been violated. Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999). The inmate must allege more than his personal belief that he is the victim of retaliation. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997). Conclusory allegations of retaliation are insufficient. Woods , *supra*, 60 F.3d at 1166. "The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" Id. (citation omitted). Causation requires an inmate to show that but for the retaliatory motive, the adverse action would not have occurred. McDonald, 132 F.3d at 231.

Plaintiff claims that defendants seized and searched his legal materials on September 28, 2004, in retaliation for his exercising his right of access to the courts and to file grievances. A prisoner has a right of access to the courts, and that right encompasses the ability to file grievances and lawsuits without fear from retaliation. Lewis v. Casey, 518 U.S. 343, 360 (1996). Thus, plaintiff has alleged the violation of a constitutional right for purposes of stating a retaliation claim.

Plaintiff argues that the motivating force behind defendants' retaliatory actions was plaintiff's history of filing grievances. However, the fact that plaintiff filed grievances about the grievance system itself and complained about other officers does not provide a motivation for either Captain Ambriz or Officer Herrera to retaliate against him. The Fifth Circuit has determined that "secondary litigation activity" does not comprise the basis of a retaliation claim. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997). Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (writ writer had no retaliation claim based on seizure of legal matters he was preparing for other inmates). Plaintiff fails to point to a specific lawsuit or grievance that may have provoked a retaliatory response from either defendant, and his grievances on other matters does not provide grounds for Officer Herrera or Captain Ambriz to retaliate.

Moreover, the undisputed evidence is that Huntsville officials instructed Officer Herrera, as supervisor of the grievance department, to find a copy of the lawsuit grievance. This explanation for the search of plaintiff's materials negates plaintiff's alleged claim of retaliatory motive. Similarly, Caprtain Ambriz was also operating under orders from Huntsville when he searched plaintiff's materials to look for the lawsuit grievance. Herrera Aff't at ¶ 5. Although plaintiff testified that he had complained about Captain Ambriz for housing him in ad. seg. for an extended time, the ad. seg. housing issue occurred in early 2004, whereas the search of plaintiff's materials did not take place until September, 2004. There is no chronology of events from which retaliation can be inferred.

Further, even assuming that plaintiff were able to show a retaliatory adverse act, he claims no injury or harm. Plaintiff claims only that his legal materials were sorted through by defendants, and returned to him. He does not claim that anything was taken from him, nor does he suggest that he was prejudiced in any litigation as a result of being deprived of his legal papers for one hour. See Jones v. Greninger, 188 F.3d 322 (5th Cir. 1999) (5-days limitation to law library is sufficient time and therefore cannot be retaliatory act).

There is no genuine dispute of a material fact on plaintiff's retaliation claims. Thus, it is recommended that defendants be granted summary judgment in their favor.

**C. Qualified immunity.**

In their final argument, defendants contend that, even if plaintiff could establish the violation of a constitutional right, they are entitled to qualified immunity to bar plaintiff's claims against them.

State employees may be shielded from liability for civil damages if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Hope v. Pelzer, 536 U.S. 730, 739 (2002); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity operates to ensure that, before officials are subjected to suit, they are on notice that their conduct is unlawful. Saucier v. Katz, 533 U.S. 194, 206 (2001). The qualified immunity determination involves a two-step analysis: whether the official violated a clearly established constitutional right and, if so, whether the official's conduct was objectively reasonable. Martinez v. Texas Dep't of Criminal Justice, 300 F.3d 567, 576 (5th Cir. 2002). Qualified immunity protects officers from liability in their individual capacity only. Foley v. Univ. of Houston Sys., 324 F.3d 310, 314 n.6 (5th Cir. 2003). The issue of qualified immunity is ordinarily one of law for the court to decide. Hunter v. Bryant, 502 U.S. 224, 228 (1991).

The uncontested evidence establishes that defendants searched plaintiff's legal materials because they had been ordered to do so by their supervisors. Herrera Aff't at ¶ 5. Plaintiff fails to offer any evidence other than his subjective belief that Defendants searched his legal materials out of retaliation, and he has no constitutional right to be free from cell searches. Defendants' actions in following their supervisors orders in this instance were objectively reasonable, and defendants are entitled to immunity.

## VI. RECOMMENDATION

For the reasons above, it is respectfully recommended that defendants' motion for summary judgment (D.E. 28) be granted, that plaintiff's claims against defendants be dismissed with prejudice, and that final judgment be entered denying plaintiff's claims.

Respectfully submitted this 7th day of December, 2005.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to FED. R. CIV. P. 72(b), 28 U.S.C. § 636(b)(1)(C), and Article IV, General Order No. 2001-6, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).